## No. 10,065.

### H. T. COTTAM & CO. VS. MECHANICS AND TRADERS' INSURANCE COMPANY.

Where goods, whilst on the wharf of a steamship company, awaiting shipment on one of the vessels of the company, are burned, the owners of the goods cannot recover for their loss upon a policy of insurance, wherein the goods insured or to be insured are referred to (quoting) : "as goods laden or to be laden on board the good ship .———"when the policy contained the further expression (quoting:) "Beginning the adventure upon said goods and merchandise from and immediately following the loading thereof on board of said ship."

This last expression will control as to the time the risk began; the former may be regarded as descriptive of or as designating the stock of goods or merchandise intended to be insured.

APPEAL from the Civil District Court for the Parish of Orleans. *Houston,* J.

---

*Braughn, Buck, Dinkelspiel & Hart* for Plaintiffs and Appellants.

*Percy Roberts* for Defendant and Appellee.

---

The opinion of the Court was delivered by

TODD, J. This is an action to recover a loss from fire under a policy of insurance.

The cause of action is set forth in the petition as follows :

"That on the 18th day of September, 1883, petitioners entered into an agreement and contract with said insurance company, by which it issued to them what is known as an open marine policy, a copy of which is hereto annexed as part of this petition, which said policy was extended from time to time and was in full force and effect on the 29th day of January, 1887.

"That on the —— day of January, 1887, petitioners made application to said insurance company to insure under said open policy certain goods, described in the annexed bill of lading, which application was made on the blanks of the company provided for that purpose, one of which is hereto annexed as part of this petition.

"Now your petitioners further represent that, after said bill of lading had been signed by the agents of the steamship Louisiana, in the city of New York, and while said goods were in the possession of said steamship, for the purpose of being laden thereon, and while on the wharf of the steamship company in the city of New York, they were totally destroyed by fire on the 29th of January, 1887. That said loss was within the terms of said policy, and therefore said company is liable to petitioners for the full value of said property, the aforesaid

sum of twenty-one hundred dollars. That the steamship Louisiana, upon which said goods were to be shipped, was to have left the city of New York on the —— day of January, 1887, and said goods would have been laden thereon for said voyage if it had not been for the aforesaid fire."

There was an exception of no cause of action filed and sustained, and judgment dismissing the suit, from which the plaintiffs appealed.

The controversy turns on the construction of the policy.

One clause of it reads as follows:

### "MARINE POLICY.

"The Mechanics and Traders' Insurance Company of New Orleans, by this policy, do insure H. T. Cottam & Co., for account of whom it may concern, lost or not lost, subject to the rates of premium, rules and conditions of the Board of Underwriters of New Orleans, existing at the time of shipment upon all kinds of lawful goods and merchandise, *laden or to be laden,* on board of the good ship ————."

The contention of the plaintiffs is that the words "laden or to be laden" embraced not only the goods actually on board the vessel, but likewise goods in the custody of the carrier, though not on board the steamer.

Did this clause stand alone the matter would seem too clear for disputation, and the loss in the manner and under the circumstances stated in the petition would manifestly be covered by the terms of the policy. But there follows another clause in these words:

"Beginning the adventure upon the said goods and merchandise *from* and immediately *following the loading thereof on board of the said vessel at* ————"

It is this last clause that makes room for controversy. The two clauses, at first blush, would seem to conflict. But is there a real conflict between them? Can they be reconciled?

The last clause was evidently intended and used to define the precise time when the risk began.

The words "beginning the adventure" are the equivalent of the expression "risk commencing." And when does it so begin? In the language of the contract "from and immediately following the loading thereof on board of the said vessel."

If from language so clear and explicit, the true intent of the parties would seem to be that the undertaking of the company—*the risk*—did not commence until *after* the goods were on board, how are we to dispose of the language in the first part of the policy, above quoted, to

the effect that the company insures all lawful goods, " laden and to be laden on board the ship ?"

The goods intended to be insured were, at that time, purchased. Some of them were already on board of the ship when the policy was signed; some were to be put on board after the signing. These goods already on board and those to be sent on board were *the* goods to be insured. .This language does not necessarily indicate *when* the policy was to go into effect, nor the exact time when the risk was to begin, but it may reasonably be inferred, especially when we consider the subsequent expressions relative to the beginning of the undertaking or risk, that the words " laden and to be laden on board " were used to designate the thing or stock of goods to be insured—that is, used in a descriptive sense.

The sole vital question in the case for the determination of the Court is, when did this policy become operative—when did the risk begin ?

We think the policy answers that question explicitly, free of all ambiguity, in the words " following the loading of the goods on board of the vessel," i. e. after the goods are on board the ship.

Our conclusion on this point is supported by several adjudications. Notably among others is that of Gordon & Talbot vs. American Ins. Co., 4 Denio, p. 360, substantially a parallel case, as will appear from the following quotations from the decision :

" Declaration on a policy dated October 7, 1841, whereby the plaintiffs were insured, lost or not lost, at and from Canton, to a port of discharge in the United States, upon the freight of all kinds of lawful goods and merchandise, *laden or to be laden* on board the good ship America, whereof ———— is master, etc. Beginninng the adventure upon the said freight from and immediately following the loading thereof on board of the said vessel at ———— as aforesaid," etc.

\*       \*       \*       \*       \*       \*       \*       \*       \*       \*

They did not take upon themselves any risk until the goods should be on board the ship; and as there is no averment that any were put on board, the plaintiff cannot recover." See also Murray vs. Ins. Co., 4 Johnson, 449; Smith & Hall vs. Mobile Navigation and Ins. Co., 30 Ala., R. 167.

The plaintiffs' counsel cite as opposed to the authority of the above cases: 10 R. 434; 7 Ann. 235 ; 17 Fed. Rep. 920 ; 95 U. S. 30.

All of these cases we have examined and none of them, save the last, directly involve the liability of insurance companies or the con-

struction of insurance policies, but refer to the responsibilities of common carriers to the shippers under the bills of lading.

In the last case (95 U. S. 30) the main point decided was that "although a written agreement cannot be varied by proof of the circumstances out of which it grew, the circumstances may be resorted to for the purpose of ascertaining the subject-matter of the agreement and the stand point of the parties in relation thereto." As for instance to show that where the policy of insurance contained a clause (quoting): "the risk is to be suspended while the vessel is at Baker's stand loading" the true meaning of the clause and the light of surrounding circumstances was that the risk was to be suspended whilst the vessel was at the place designated for the purpose of being loaded.

That case is not relevant because, in the instant case, no circumstances exist or are suggested calculated to elucidate the contract as to the intent of the parties, and the language of contract in our estimation is clear and explicit and free from all obscurity.

For these reasons, we do not feel authorized to disturb the conclusion reached by the judge of the first instance.

Judgment affirmed.