## BLUEFIELDS FRUIT & S. S. CO. v. WESTERN ASSUR. CO. OF TORONTO.

(Circuit Court of Appeals, Fifth Circuit.   May 12, 1920.)

No. 3423.

1. **Insurance ⬤⟿175—Open policy on cargo "beginning the adventure" does not insure against risk to vessel before loading.**

    A policy insuring a cargo on any vessel by which it may be transported, containing the common "beginning the adventure" clause, covers no risk prior to the loading of insured cargo on board the vessel which was to make the voyage, in the absence of any inconsistent clause in the policy.

2. **Insurance ⬤⟿149—Printed clause given effect, except as modified by writing.**

    By using a printed form of marine insurance policy, and adding or interpolating typewritten provisions, the parties manifested an intention that the printed provisions have the meaning and effect called for by their language, so far as it is not in conflict with any typewritten provisions.

3. **Insurance ⬤⟿175—Rider covering risk of craft or loading held not to cover risk of vessel before loading.**

    A clause, attached to a marine insurance policy, covering risk of craft to and from the vessel, merely insures the cargo while in transport to and from the vessel, but does not cover a loss of the cargo due to accidents to the vessel before any of the cargo was loaded, whereby the shipment was delayed and cargo spoiled.

4. **Insurance ⬤⟿175—Covering loss resulting from delay to the vessel in cargo policy refers only to delay after cargo is on board.**

    A clause of an open policy on a cargo, which named no particular vessel, insuring against delay and consequence of delay from certain accidents to the vessel, refers only to the vessel having the cargo on board, and does not cover delay resulting from an accident to the vessel before any of the cargo was loaded.

5. **Insurance ⬤⟿175—Beginning adventure clause controls beginning of risk, rather than laden clause.**

    Where a cargo insurance policy describes the cargo as laden or to be laden, and also contains the common "beginning the adventure" clause, the latter clause is controlling as to the time the risk attaches; the former being merely descriptive of the thing insured.

6. **Insurance ⬤⟿175—Reference to "vessel or conveyance" in clause held not to cover risks to vessel before loading.**

    In a cargo insurance policy, containing a clause attaching the risk "beginning the adventure" in the "vessel or conveyance as aforesaid," the vessel or conveyance refers only to the vessel in which the voyage is to be made, not to the craft in which the cargo was conveyed to the vessel, though the risk during such conveyance was covered by a rider attached to the policy.

7. **Insurance ⬤⟿175—All risks until delivered does not include risk to vessel before loading.**

    A clause covering all risks until delivered into warehouse, in a cargo insurance policy which had specified numerous risks covered by the policy, which clause followed immediately a provision covering risk of craft during loading, covers only similar risks during discharge, and does not make the policy cover a loss due to delay to the vessel by accident before loading.

8. **Contracts ⬤⟿152—All provisions to be given express meaning, if possible.**

    All the provisions of a contract are to be given the meaning expressed by their language, unless it plainly appears that only a part of it conveys all the meaning intended by the parties.

⬤⟿*For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes*

·9. Insurance ☞175—No lighterage clause held not to cover risks to vessel before loading.

> In a cargo insurance policy, a clause excepting lighterage or craft risk from the interior before the cargo reached port of shipment does not indicate an intention to cover all risks after arrival at the port, so as to cover damage resulting from delay to the vessel intended to take the cargo, because of an accident before any of the cargo was loaded.

Appeal from the District Court of the United States for the Eastern District of Louisiana; Rufus E. Foster, Judge.

Libel in personam by the Bluefields Fruit & Steamship Company against the Western Assurance Company of Toronto. Decree for respondent, and libelant appeals. Affirmed.

Wm. C. Dufour, George Janvier, and E. Howard McCaleb, all of New Orleans. La.. for appellant.

Barry, Wainwright, Thacher & Symmers, of New York City, and Denègre, Leovy & Chaffe, of New Orleans, La. (John C. Prizer, of New York City, of counsel), for appellee.

Before WALKER, Circuit Judge, and CALL and HUTCHESON, District Judges.

WALKER, Circuit Judge. This was a libel in personam, filed by the appellant, Bluefields Fruit & Steamship Company, against the appellee, Western Assurance Company of Toronto, on a policy of marine insurance issued by the latter to the former, a copy of which was made an exhibit to the libel. The claim was for the alleged amount, with interest thereon, of the value of a cargo of bananas, charged to have been seriously damaged, with the result that it became a total loss, in the way disclosed by averments to the following ·effect:

On May 12, 1917, the bananas were on board craft or boats at Providence Landing, Nicaragua, awaiting shipment. On and prior to that date they were intended by the libelant to be loaded on the steamship Lisboa at Providence Landing, and orders to that effect had been given, and the bananas were in due transit by such craft or boats to the steamship mentioned, and would, on or about that date, have been loaded upon that steamship and transported by it thence to New Orleans, but for the breaking of four of the steamship's port propeller blades in consequence of striking a submerged obstruction while the vessel was maneuvering to take up a position for loading the bananas. At the time the accident occurred the craft or boats, with the bananas loaded on them for transshipment into the steamship, were in motion or transit from the station or landing place to the ship's side. By reason of the loss of the propeller blades the steamship was delayed, in that it could not properly and safely transport cargo from Providence Landing to New Orleans without being repaired. The repairs could not be made at Providence Landing, and

---

by reason of the loss of the propeller blades the steamship was compelled to go to Colon, Canal Zone, for repairs, resulting in a delay of about 26 days. No other steamship was available to carry the bananas to destination. As a direct and necessary result of the delay so caused, the bananas were seriously damaged and became a total loss. The court sustained an exception to the libel on the ground that it does not state a cause of action.

The policy sued on was in part printed and in part typewritten; a printed form being used, to which a typewritten rider was attached. The body of the policy, after the formal heading, the first words of which were "Ocean Cargo Open Policy," begins as follows (the italics showing the words typewritten in blanks in the printed form):

"To *Bluefield Fruit & Steamship Company*
"On account of *whom it may concern*
"In case of loss to be paid to *them or order*
"Does make insurance, and cause *them* to be insured, at and from

*"As per form attached*

"On *bananas and/or cocoanuts*—
*as per form attached.*
"Laden or to be laden on board the good *steamer or steamers*
"Beginning the adventure upon the said goods and merchandise from and immediately following the loading thereof on board of the vessel or conveyance as aforesaid and so shall continue and endure until the said goods and merchandise shall be safely landed as aforesaid. And it shall and may be lawful for the said vessel, in her voyage, to proceed and sail to, touch and stay at, any ports or places, if thereunto obliged by stress of weather or other unavoidable accident, without prejudice to this insurance. The said goods and merchandise, hereby insured, are valued (premium included) at

*"As per form attached*

"Touching the adventures and perils which the said company is contented to bear and does take upon itself, they are, of the seas, lakes, rivers, canals, railroads, fire, jettisons, barratry. * * * "

The following are the provisions of the typewritten rider made a part of the policy which can have any bearing on the questions raised in the case—the copied provisions being in the order shown below:

"On bananas and/or cocoanuts per steamer or steamers and connecting conveyances."

"At and from ports and/or places in Central America to any port or ports in United States, direct or otherwise."

"Free of particular average unless the vessel be stranded, sunk, burned, or in collision, in any, all or several of which events the insurers are liable for such loss by decay, injury or damage to the fruit as is occasioned thereby, or occurs during, or in consequence of delay resulting therefrom, insurers are also liable for such loss in consequence of delay resulting from any, all or several of the following causes, i. e., breakage of shaft, loss of blades from propeller, derangement or breakage of machinery, derangement or breakage of rudder and/or sternpost whether or not the vessel be stranded, sunk, burned, or in collision provided that in all cases the loss amount to 10 per cent. after deducting 5 per cent. for ordinary loss.

* * * * * * * * * * *

"Including all risk of craft or boats to and from the vessel and from the warehouse or factory, while in transit by railway, or any conveyance and while in warehouse and/or shed, or on wharf, or quay, awaiting shipment or

transshipment, or lighterage, and all risk until safely delivered into the consignee's warehouse."

"Each craft or lighter to be deemed a separate insurance.

\* \* \* \* \* \* \* \* \* \* \* \*

"With liberty to tow and assist vessels in all situations and including all risks incidental to steam navigation, especially those arising from accidents to boilers and/or machinery.

\* \* \* \* \* \* \* \* \* \* \* \*

"It is especially understood and agreed, however, that notwithstanding the foregoing the risk under this policy only commences at the port of shipment, no lighterage or craft risk from the interior being covered."

[1] The policy as a whole shows that the intention was to insure against risks to which the fruit mentioned would be exposed in a voyage from Central America to a port or ports of the United States, including specified risks before and after the fruit was on the vessel which carried it. The enterprise of an owner of bananas assembled at a port or place in Central America for shipment to a port or ports of the United States is subject to risks other than those which were insured against by the policy sued on. Among such other risks is that of not having or providing at the proper time and place a vessel ready to receive and carry the bananas. The happening of any one of an indefinite number of contingencies may result in a vessel not being available for the shipment of bananas so assembled in time to get them to a United States port before they are lost by decay. To say the least, nothing in the policy makes it plain that the insurer agreed to indemnify the owner against such risks. From the terms of the policy it is to be implied that it was assumed or presupposed by the parties that a vessel would be present at the proper time and place and ready to take on the bananas and undertake the contemplated carriage, and that there was an absence of any intention to cover risks on that score. Any part of the policy which, considered by itself, might be regarded as indicating that the risk of a happening having the effect of preventing a vessel being available to receive and undertake the carriage of the bananas at the proper time was intended to be insured against is to be considered in the light of the fact that such a risk is one materially different from those which the language of the contract plainly shows were intended to be covered.

But for the presence in the contract of the provisions contained in the clauses of the rider which respectively use the words "risk of craft," etc., "craft or lighter," and "lighterage or craft risk," there would be no basis at all for the contention that any risk insured against had attached when the breaking of the propelled blades occurred. The printed "beginning the adventure" clause is such a one as is in common use in marine policies insuring cargo. It is well settled that the use of such a clause, if nothing inconsistent with it is inserted, has the effect of preventing any risk under the policy from attaching prior to the loading of the insured cargo on board the vessel which was to make the voyage. Smith & Holt v. Mobile Navigation & Mutual Ins. Co., 30 Ala. 167; Mobile Marine Dock & Mutual Ins. Co. v. McMillan & Son, 27 Ala. 77; Gordon & Talbot v. American Ins. Co. of New York, 4 Denio (N. Y.) 360. It is not unusual for marine cargo

voyage policies to contain provisions having the effect of insuring the cargo while it is in transit to and from the vessel, or while it is on a dock or wharf, prior to the beginning or after the ending of the voyage. It is plain that under the clause of the policy sued on in reference to "risk of craft," etc., risks attached prior to the bananas being on board the vessel which was to make the voyage. The question is: Had the risk of such a casualty as the one to which the loss of the bananas by decay is attributed attached before they were loaded on the vessel to which the mishap occurred?

[2, 3] By making use of a printed form, and adding or interpolating typewritten provisions, the parties manifested an intention that the printed provisions have the meaning and effect called for by their language, so far as it is not in conflict with any typewritten provision. Unless provisions of the policy which will be referred to require a different conclusion, the "beginning the adventure" clause may be given the effect of fixing the time when the voyage or vessel risks attached, and the "risk of craft," etc., provisions also may be given full effect as covering other separate and distinct risks which attached prior to the time when the risks referred to in the former clause would attach. Such clauses are not unusual. Provisions somewhat similar to those in question have in well-considered cases been given the effect of insuring the goods while in transit to and from the vessel which was to or did make the voyage, but not against the vessel risks, which, under the other provisions of the policy, do not attach prior to the loading of the goods on the vessel, with the result that the insured goods, while in craft or boats carrying them to or from the vessel, are not regarded as at the specified vessel risks; the insurer not being liable for a loss due to such a casualty as the breaking of the vessel's shaft or the loss of blades from its propeller before the insured goods reach it. Thames & M. M. Ins. Co. v. Pitts Son & King [1893] 1 Q. B. 476; The Alsace-Lorraine, 62 L. J. Adm. 107; Holhead v. Young, 6 El. & B. 312. Of the policy sued on, except the craft-risk provisions of it, it may be said, in the language of the last-cited case:

"This is not an insurance on the ship, but on goods on board the ship when loaded."

[4] In view of the fact that the policy sued on is an open one, which named no particular vessel, and left the insured free to have the fruit carried on any suitable steamer or steamers, it is to be inferred that "the vessel" referred to in the clause which specifically made the insured liable for loss by decay, injury, or damage to the fruit in consequence of delay resulting from loss of propeller blades, or another of the enumerated causes, meant only the vessel having the fruit on board. The terms of that provision indicate that the parties contemplated that "the vessel" was to be identified by the fruit having been loaded on it, and that a casualty to a vessel not so identified was not in mind. Prior to loading, the vessel and cargo are not in one common adventure, the perils of which it is the main purpose of the policy to insure cargo against. There is nothing in the policy to

indicate that the existence of an unexecuted purpose of the insured to have the subject of the insurance carried by a selected steamer was intended to have the effect of making the policy cover risks to such steamer before the loading on it of any of the fruit mentioned.

[5] Several expressions or provisions of the policy were mentioned in the argument in behalf of the appellant as supporting the contention that the vessel or voyage risks had attached when the casualty to which the loss of the bananas is attributed occurred. It is suggested that the printed words "laden or to be laden" have that effect. Those words are in common use in such policies. They are understood to be descriptive of the thing or things insured. When the policy containing them also contains such a "beginning the adventure" clause as the one of the policy in suit, the latter is controlling, as it specifically fixes the time when the risk attaches. Cottam v. Mechanics' & Traders' Ins. Co., 40 La. Ann. 259, 4 South. 510; Gordon & Talbot v. American Ins. Co., 4 Denio (N. Y.) 360.

[6] It cannot well be inferred that the words "the vessel or conveyance as aforesaid," in the printed "beginning the adventure" clause, were intended to refer to the craft or boats used in getting the fruit to the vessel which was to carry it, with the result of making the vessel risks attach upon the loading of the fruit on boats or craft used to get it to the vessel. The printed form of which those words are a part contains nothing in regard to a risk prior to the subject of insurance becoming ocean cargo. The large blank left in that form between the words "laden or to be laden on board the good" and the "beginning the adventure" clause evidently was intended to be used to designate the instrumentality or instrumentalities by which the insured cargo was to be carried, which might have been a barge or barges in tow, instead of "steamer or steamers," as in the policy in suit. The words "vessel or conveyance as aforesaid" were appropriate to refer to whatever marine instrumentality of carriage might be stated in the preceding blank space, and would have been a part of the contract made by using the form, though no provision had by a rider been made as to "risk of craft or boats to and from the vessel." That the words "vessel or conveyance" were intended to refer only to the one carrying the cargo on the voyage is made quite plain by the use of the same words in the subsequent printed clause, reading:

"It is hereby agreed that the said company shall not cover for an amount exceeding $20,000 by any one vessel or conveyance at any one time," etc.

It hardly would be contended that this provision had reference to craft or boats used in transferring the fruit to and from the vessel, with the result of indemnifying the insured to the extent of $20,000 for fruit on each of several boats used in transferring it to a single vessel.

[7] For support of the above-mentioned contention in behalf of the appellant its counsel principally rely upon the concluding words of the "risk of craft or boats," etc., clause, namely, "and all risk until safely delivered into the consignee's warehouse," and a succeeding provision:

"It is especially understood and agreed, however, that, notwithstanding the foregoing, the risk under this policy only commences at the port of shipment, no lighterage or craft risk from the interior being covered."

The above-quoted concluding words of the "risk of craft or boats," etc., clause must be interpreted with reference to the words which immediately precede, from which they are separated only by a comma. The words "all risk," as so used, cover only risks which are of like kind to those previously enumerated, and none other.    Monongahela Ins. Co. v. Chester, 43 Pa. 491; 26 Cyc. 660.    Those words, being part of a typewritten clause dealing with risks which, but for the insertion of that clause, by language of the printed form made use of would have been prevented from attaching at all, well may be understood as having been intended to cover only risks like those previously enumerated in the same clause.    We think full effect is given to the concluding words of the "risk of craft or boats," etc., clause if they are so interpreted as to mean only that all risks whatsoever of the several instrumentalities and places mentioned in that clause were covered, and that the insured's liability under that clause was to last until the fruit should safely be delivered into the consignee's warehouse.    To give to that clause, considered by itself or in connection with the other one last above set out, the effect of making the policy one covering all risks whatsoever from the time the fruit was assembled at the port of shipment and was ready to be started on the voyage, would result in requiring that the use of much of the language found in the contract, in both the printed and typewritten parts of it, be considered a sheer waste of words.    If the provisions relied on were intended to have the meaning attributed to them, both the enumeration in the printed part of the policy of the risks intended to be covered and the specific typewritten provision as to enumerated vessel risks were wholly unnecessary.

[8] All provisions of a contract are to be given the meaning expressed by their language, unless it plainly appears that only a part of it conveys all the meaning intended by the parties. It is not to be supposed that the instrument evidencing the contract would have contained much that it did contain, notably the long typewritten clause specifying, in addition to risks enumerated in the printed part, particular risks to be covered, if another small part of it had been understood by the parties to mean that the fruit mentioned, from the time it was assembled and ready for shipment at a Central American port or place, was to be insured against all risks whatsoever.

[9] The language of the last-quoted clause shows that it was used to make plain that "no lighterage or craft risk from the interior" was intended to be covered.    It shows that no risk under the policy was to attach prior to the fruit being at the port of shipment.    It by no means shows that all risks insured against were intended to attach prior to the loading of the insured fruit on a vessel selected to carry it to a port of the United States.    It does not indicate a purpose to deprive the printed "beginning the adventure" clause of any effect in fixing the time when some of the risks insured against attached.    Full effect may be given to its language, whether considered by itself or

in connection with other provisions of the contract, without making the policy cover risks to a vessel on which the insured fruit never was loaded. Both printed and typewritten provisions of the policy negative the existence of any intention to insure against consequences of the breaking of the propeller blades of a steamer on board which none of the appellant's fruit was ever received. Considering the policy as a whole, we think it would be a perversion of the language of the parts of it relied on in behalf of the appellant to give it the meaning attributed to it in argument.

The foregoing considerations we think require the conclusion that the allegations of the libel do not show that the loss of the bananas was caused by a risk or casualty insured against by the policy sued on. It follows that the court did not err in sustaining the exception to the libel, and that the decree to that effect should be affirmed. It is so ordered.

Affirmed.